COURT EXHIBIT

CASE NO. 25-20312

EXHIBIT NO. 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CR-20312-BECERRA

UNITED STATES OF AMERICA

vs.

YERGAN JONES,

    Defendant.
_____/

## FACTUAL PROFFER

The Defendant, Yergan Jones (hereinafter referred to as the "Defendant"), his counsel, and the United States agree that, had this case proceeded to trial, the United States would have proven the following facts, among others, beyond a reasonable doubt:

1. Jackson Health System ("Jackson") was a nonprofit medical system that served Miami-Dade County. Jackson was funded through a sales tax, philanthropic contributions, and federal government programs, among other sources. Jackson was managed by the Public Health Trust of Miami-Dade County.

2. Jackson Health Foundation (the "Foundation") served as the fundraising arm of Jackson. Through donations, the Foundation helped fill the gaps of capital projects and programmatic needs of Jackson that were not financed by public support. One way the Foundation solicited donations was through fundraising events.

3. Charmaine Gatlin served as the Chief Operation Officer ("COO") of the Foundation from in or around October 2014, until her termination in or around November 2024. Charmaine Gatlin had the authority to approve invoices to vendors that provided goods and services for the Foundation's fundraising events.

4. The Defendant was a resident of Lithia Springs, Georgia. The Defendant was listed as the Chief Executive Officer of American Sound Design, Inc. ("ASD") on Georgia incorporation records. According to Georgia incorporation records, the principal office address for ASD was Lithia Springs, Georgia. At times, the Defendant used the name "Yergan Jones Sr." to conduct business.

5. Between 2019 and 2024, Charmaine Gatlin and the Defendant submitted false and fraudulent invoices from ASD to the Foundation for audiovisual event services that did not occur at Jackson or the Foundation.

6. At times, Charmaine Gatlin instructed the Defendant how to falsify invoices to the Foundation for services ASD did not provide. For example, on November 25, 2023, the Defendant emailed Charmaine Gatlin's personal email with draft invoice number 920 for alleged audiovisual services at "Jackson Health System Holiday Parties" in December 2023. On November 26, 2023, Charmaine Gatlin responded: "Take $3k from South and $3k West and add the $6k to Main total," and then: "Make it an odd number as well. 69,240." On January 7, 2024, the Defendant emailed Charmaine Gatlin's personal email with draft invoice 920-ADD for an alleged "add on" extending the audiovisual equipment at the Jackson "Holiday Parties" two more "additional days" (totaling $50,172.5). Charmaine Gatlin responded: "Get it to $58,477. When you email it over ask for the status of the payment." The Defendant did not provide the invoiced audiovisual services at Jackson or the Foundation.

7. In another example, on August 8, 2019, Charmaine Gatlin sent the Defendant an email from her personal email with the subject "Opportunity." In the body of the email, Charmaine Gatlin wrote: "We had company donate stage sound and lights for back to school event." Charmaine Gatlin then wrote the following in the email: "Back to School Block Party, August 3rd, 11 am - 3 pm, [school address], Stage, sounds and lights, (You know what to put), $30,250." The Defendant submitted an

invoice for that same amount to the Foundation, for alleged sound and lighting services at a back to school event that were never provided, and the Foundation paid the invoice.

8. The Defendant kicked back approximately half the payments he received from the Foundation to Charmaine Gatlin's personal bank account. Between January 2019 and September 2024, the Defendant received approximately $2,138,055 from the Foundation through his company ASD. These payments were received by ASD via about 53 payments, including 51 wire transfers and two automated clearinghouse (ACH) transactions all deposited to an ASD Wells Fargo bank account ending 7137. The Defendant was the sole signatory on this ASD bank account during the conspiracy period. The Defendant kept $1,079,616 in payments from the Foundation. Throughout this time, after receiving the deposits from the Foundation, the Defendant then paid approximately $1,058,439 (or 49.5%) in kickbacks to Charmaine Gatlin in a series of payments closely following the deposits from the Foundation. Charmaine Gatlin received the payments from the Defendant via wire (63), check (10), and one Zelle payment all which were deposited to Bank of America account ending 5333 over which Charmaine Gatlin maintained sole signatory authority. These kickback payments were transmitted via interstate wires.

9. To conceal the kickbacks, Charmaine Gatlin sent the Defendant false invoices making it appear as though she was consulting for ASD. For example, on January 31, 2021, Charmaine Gatlin emailed the Defendant false invoices making it look like Charmaine Gatlin consulted for ASD including: "Jackson Rehab Ribbon Cutting" (for $29,625), "MTI 50th Anniversary/Jungle Island" (for $21,625), "Virtual Conference Jackson Residents" (for $26,215), and "Jackson Covid Media Village" (for $43,562.50). These payments were kickbacks to Charmaine Gatlin for paying ASD via the Foundation.

10. Based upon the foregoing facts, which establish all the elements of the charge to which



3

the Defendant is pleading guilty, the Government would prove the Defendant's guilt at trial.

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

Date: 7/15/25   By: _____
ELIZABETH YOUNG
ASSISTANT UNITED STATES ATTORNEY
DEPUTY CHIEF

Date: 8/12/25   By: _____
HECTOR FLORES
COUNSEL FOR YERGAN JONES

Date: 8/12/25   By: _____
YERGAN JONES
DEFENDANT

4